MCKINNEY v. THE PURE OIL COMPANY.

[No. 18,925. Filed November 13, 1958. Rehearing denied December 17, 1958. Transfer denied February 2, 1959.]

*Charles A. Lowe,* of Lawrenceburg, *Thomas M. Mc-Kinney,* of Basin, Wyoming, and *Hartell F. Denmure,* of Aurora, for appellant.

*Chester E. Bielby* and *William H. Turner,* both of Lawrenceburg, for appellee.

KELLEY, J.—This was an action by appellee against appellant filed June 30, 1949, to recover on account for merchandise (gasoline) sold and delivered to appellant and which is unpaid in the amount of $2383.94.

The appellant filed answer to the complaint admitting the allegations thereof.

Appellant also filed what is designated as a "cross-complaint" alleging that he and appellee entered into a written contract on March 1, 1948, for a period of one year, by the terms of which appellee agreed to furnish, supply and sell to appellant, gasoline, oil, and other motor vehicle supplies; that for many years appellant had business arrangements with one George Ward; that appellee well knew that appellant had a contract with said Ward whereby the latter agreed to purchase gasoline, oil, and other motor vehicle supplies from appellant; that during 1948 said contract with Ward came up for renewal and appellant solicited the aid of appellee's agents, servants, and employees to assist him

in renewing said contract; that said agents and servants entered into negotiations and assisted appellant in renewing said contract; that said agents represented they were acting in the interest of appellant and endeavoring to secure the renewal of the contract for him. That appellee, by its agents and servants falsely represented to said Ward that a written contract he was to sign was a renewal of his contract with appellant and Ward believed and acted thereon and signed said agreement in the belief it was a renewal of the contract with appellant. That said contract instead of being taken for appellant was taken by appellee in its own name and right; that thereafter appellee supplied Ward as its direct customer and not through appellant. That appellee, by its false representations and in violation of its position of trust and confidence, wrongfully procured the contract for itself and defrauded appellant of the fruits and profits of the contract. Wherefore, it is prayed that appellee be declared a Trustee for appellant with reference to said contract; for an accounting; and for judgment for the amount shown by the accounting.

Appellee filed a motion to strike the entire "answer and cross-complaint" of appellant for the reasons: The complaint is on the theory of debt and the answer and cross-complaint alleges a tort action, and that the cause of action, if any alleged, in the cross-complaint did not arise out of and is not connected with the transaction on which the complaint is based.

Appellee, on the same day, filed its demurrer to said cross-complaint on the ground that it did not state a cause of action against appellee in that there is no allegation that there was a contract between appellee and appellant giving the latter "the exclusive right to sell said merchandise."

Thereafter the court, with one entry and order, sustained the demurrer and the motion to strike.

Thereafter appellant filed a "counter-claim" alleging, in substance, that from 1936 down to 1948 appellee sold and delivered gasoline to appellant for resale under an arrangement between them; that appellee furnished appellant with a tank installed on a chassis belonging to appellant which was used for delivering gasoline to appellant's customers; that the tank was calibrated by appellee to hold a total gallonage of 714 gallons; that the calibration was wholly inaccurate, as appellee knew, and instead of holding 714 gallons, said tank held but 706 gallons. That from 1937 to 1948 approximately 5500 loads of gasoline were delivered by truck to appellant's customers and each load was 8 gallons short for a total shortage of 45,000 gallons. That the tank was furnished and calibrated by appellee for the purpose of cheating and defrauding appellant of 8 gallons of gasoline on each load. That appellant did not discover said fraud and deception until a meter was installed on said tank-truck in October, 1949.

Answer was filed to said counter-claim and the issues were submitted to the court. The court found for appellee upon its complaint for $2383.94; and for appellee and against appellant on his counter-claim. Consistent judgment followed.

Appellant assigns error of the court in sustaining the demurrer to and the motion to strike out his said cross-complaint. If the latter mentioned pleading was amenable to a motion to strike it, then there was no error in also sustaining the demurrer to it. *Sams* v. *Kern* (1951), 121 Ind. App. 370, 98 N. E. 2d 920. Appellant's said pleading was denominated "Cross-complaint" but clearly was not such, and appellant does not so contend. Nor was it a "counter-

claim" since the counter-action alleged therein did not grow out of and was not connected with the cause of action alleged in appellee's complaint.

Appellee contends that the pleading was not a set-off because the facts alleged therein sounded in tort arising independently of appellee's cause of action, and, therefore, the same was properly stricken. Appellant urges, in effect, that the allegations of the involved pleading show conclusively that the case stated was not in tort but was to establish appellee as a trustee and to procure an accounting of the profits under a contract wrongfully "taken over" by appellee.

The trial court, by sustaining the appellee's motion to strike, and striking, said pleading from the record, apparently construed said pleading as sounding in tort and consequently not proper as a set-off. *Sams* v. *Kern, supra.* Appellant, however, maintains that the pleading constituted an "equitable set-off" within the provisions of section 92, ch. 38, Acts 1881 (Spec. Sess.), Burns' 2-1015 (Third), 1946 Replacement, and his right to set it up and maintain it "is clearly supported by statute."

It seems some confusion here exists as to the construction and application of the latter cited statute. Legal set-off is wholly statutory in Indiana and was unknown to the common law. Said section 2-1015, Burns', *supra,* reaffirmed the right given in 2 G. & H. p. 88, Sec. 57, to plead a set-off, whether such set-off be legal or equitable in nature. Although included by the said statute with answers, a set-off is not an answer as a defense to the complaint but, properly speaking, is a cross-action by the pleader thereof against his adversary. It must state a cause of action in favor of the former against the latter. Said statute, while establishing the right to plead a set-off,

does not define the substantive requirements thereof nor the character or kind of actions in which the same may be properly filed.

Section 93, ch. 38, Acts 1881 (Spec. Sess.), Burns' 2-1016, 1946 Replacement, provides that a set-off is allowed only in actions for money-demands upon contract, and must consist of matter arising out of debt, duty or contract. The word "duty" was early held, under the old code, to relate to causes arising *ex contractu* and not those arising *ex delicto*. *Indianapolis and Cincinnati R. R. Co.* v. *Ballard et ux.* (1864), 22 Ind. 448. "This decision has been uniformly followed, and it is well settled that a tort cannot be pleaded as a set-off in any case, whether the plaintiff's action is for a tort or upon contract." Lowe's Rev. Works' Indiana Practice, Vol. 2, Sec. 19.4, note 2, page 39. See, also, *Sams* v. *Kerns, supra.*

It seems to us that appellant's pleading now under consideration, notwithstanding its nomenclature of title and its prayer for relief, pleads a cause of action sounding in tort. It charges the appellee with making false representations to an alleged contract customer of appellant by means of which appellee wrongfully procured a renewal contract with said customer for itself and thereby defrauded appellant of the fruits of a renewal contract. Such facts, if properly stated, sound in tort. 86 C. J. S., *Torts,* Sec. 43, page 955. Whether such facts, as stated in the pleading, were sufficient to constitute a cause of action, we need not now determine, since the motion to strike went to the propriety of the pleading and not its sufficiency.

Appellant's proposal that the pleading was "an equitable defense" seems without merit. First, as

pointed out above, a set-off is not a defense to an action, but a cross-action. Secondly, it was said in *Anderson* v. *Biggs et al.* (1948), 118 Ind. App. 266, on page 273, 77 N. E. 2d 909,

". . . courts of equity in Indiana have always allowed set-offs in cases where they could not be granted in law if such relief was necessary to effect clear equity and prevent irremedial injustice. . . . This is on the theory that equity has such jurisdiction independent of statute and will exercise it when there is some equitable ground for relief growing out of the transaction or relation of the parties. Our courts, however, have limited the equitable grounds that will warrant overriding the statutory law to cases where the parties, against whom the relief is sought, are either insolvent or non-residents of the state. . . ."

None of these requisites for equitable intervention are suggested or argued by appellant. Appellant has made apparent no error of the court in sustaining appellee's motion to strike and striking the referred to pleading.

The remaining assigned error by appellant is that the decision of the court is contrary to law. This assignment goes only to the court's finding on appellant's counter-claim since appellant's answer admitted the allegations of appellee's complaint.

Appellant's argument on this score is somewhat uncertain. The evidence tended to establish that appellee maintained a bulk tank at Elizabethtown, Ohio, and that appellant and his employees were the only persons to remove gasoline therefrom. Appellee pumped the gasoline into the tank from its own tank truck which was loaded at Cincinnati. The amount of gasoline delivered to the bulk plant from appellee's delivery tank truck was measured by a meter ticket registered by a meter ticket pump when the delivery tank truck was filled. There was no way the appellee could remove the

gasoline from the bulk tank after it was delivered. Appellant filled the tank he used for deliveries by force of gravity through the bottom of the bulk tank.

Each time appellant removed gasoline from the bulk tank into his delivery tank (which latter tank was owned by appellee) an invoice therefor was made by him. On the first day of each month, appellee made a "stick reading" in feet and inches of the gasoline in the bulk tank and determined the amount of gallonage then in the tank by means of a "gauge chart" read against the stick. To this was added the deliveries made by appellee's tank trucks to its bulk tank during the month. At the end of the month or on the first day of the following month, appellant's invoices were totalled and deducted from the amount of gasoline which was in and had been delivered to the bulk tank during the month. If it was found that appellant had charged himself with more gasoline than he had actually taken, he was credited with the difference. And if it was found that more gasoline had been removed than was reflected by said invoices, appellant was charged with the shortage. This method of determining the amount of gasoline removed by appellant and of the charge or credit therefor was used by the parties during the eleven and one-half (11½) years appellant purchased gasoline from appellee and the former made no complaint during said time with reference thereto, and appellant's accounts, up to the months of September, October, November, and December of 1948, were fully paid. The account for the last four named months is the one herein sued upon by appellee.

Before proceeding further with the evidence delineation, it is necessary to recall the exact issue provoked by appellant's counter-claim. It must be remembered that appellant admitted the account as alleged by ap-

pellee and, therefore, the evidence to be considered, under appellant's assignment of error, is that which tended to prove or disprove allegations of appellant's counter-claim to the end of determining whether such evidence entitled appellant to relief upon the counter-claim which was denied him by the finding of the court.

The material allegations of the counter-claim required appellant to prove that in the neighborhood of 1936, the exact years not clearly appearing, appellee supplied and furnished appellant with a tank for the purpose of delivering gasoline to his customers; that said tank was calibrated by appellee and a metal plate installed thereon to indicate the number of gallons the tank would hold; that said tank had five compartments holding a total gallonage of 714 gallons, as determined by the calibration fixed on the tank by appellee; *that said calibration and the gallonage indicated by said brass plate, installed by appellee, "was wholly inaccurate, as the plaintiff (appellee) well knew";* that instead of holding 714 gallons, as indicated by the said calibration, the tank held 706 gallons; *that the tank was "furnished and calibrated" by appellee "for the purpose of cheating and defrauding" appellant of eight gallons of gasoline on each truck load thereof.* Other allegations went to the theory of damages sustained by appellant.

There is evidence that the delivery tank in question was calibrated by appellee in 1936 by affixing thereto an adjustable plate or bolt with a pointer across the surface of the liquid; that the gauge or marker was set at a certain height which would indicate the number of gallons in the particular compartment, and then it was "sealed" with a sealing tool. When the several compartments of the tank were filled to the markers,

it held 714 gallons. Appellant testified that in 1952 he discovered that the calibrator was "wrong" and had the tank gallonage tested by a meter and it showed an eight gallon shortage in the tank gallonage, so that it held 706 gallons instead of 714.

The evidence on the issue of whether appellant was cheated and defrauded or suffered any loss or damage by reason of the calibration of the tank is also ▮ in conflict. Appellee's evidence tends to prove that the measurements of the bulk tank in Elizabethtown, taken as we have above delineated, were used to determine "how much he (appellant) owed" appellee, and that these measurements and appellant's invoices were used as the "basis" of the billing to appellant; that the figure used in the billing would have been the same whether or not appellant used his delivery tank. There is evidence on behalf of appellant that his invoices were used as the basis to determine the amount of his account and that he paid according thereto. In the face of such conflicting evidence, we cannot disturb the findings of the court thereon. Consequently, whether or not appellant's tank was properly calibrated assumes no importance since it occasioned him no loss and was not used as the basis of appellee's charges against him. It follows that the allegations of appellant's counter-claim remain unproved and he was not denied by the court any relief to which the evidence entitled him.

Appellant generally urges in argument that appellee has been unjustly enriched by reason of the asserted eight gallonage shortage, that the stick measure- ▮ ment was used only to determine the amount of appellant's commission, and that appellant paid twenty cents (20¢) per gallon for gasoline but was credited at only eight cents (8¢) per gallon. How-

ever, he does not apply such argument to any issue, ruling, or cause for new trial and we are unable to ascertain what application thereof appellant would have us make.

Judgment affirmed.

NOTE.—Reported in 154 N. E. 2d 53.

> Transfer denied, Landis, C. J., Jackson, J., not participating, in which Achor, J., dissents.